IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.  5:04cr26/MCR
5:06cv176/MCR/MD

PAUL LAVANE HUNTER

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 78). The government has filed a response (doc. 85) and the defendant has filed a reply and supplemental reply. (Doc. 88 & 89). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in an eight count superseding indictment with (1) possession of a firearm by a convicted felon; (2) possession with intent to distribute marijuana; (3) possession of a firearm in furtherance of a drug trafficking crime; (4) distribution of cocaine; (5) possession of a firearm by a convicted felon (second count); (6) possession with intent to distribute marijuana (second count); (7) possession of a firearm in furtherance of a drug trafficking crime (second count); and (8) possession with intent to distribute cocaine. Defendant was represented by William Edward Bubsey, Esq.

Following a jury trial, defendant was convicted as charged. (Doc. 39). He was sentenced to a term of 424 months imprisonment. (Doc. 46, 48). He appealed, challenging the sufficiency of the evidence to sustain his convictions, and the Eleventh Circuit affirmed. (Doc. 69).

In the present motion, defendant raises three grounds for relief. He contends that his trial counsel was constitutionally ineffective because he conceded defendant's guilt to the jury on several counts, that the prosecutor engaged in misconduct by pointing out counsel's concession to the jury and by violating his constitutional right to a trial in state court.

## II. LEGAL ANALYSIS

A. <u>Counsel was ineffective because he "plead defendant guilty" to five counts of the indictment</u>

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct

fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

In defendant's first ground for relief he contends that counsel was ineffective because he effectively conceded the defendant's guilt to counts 1, 2, 3 (sic), 5 and 6, of the indictment thus causing him to receive an additional 25 years in prison.

For ease of consideration, the counts of the indictment may be grouped as follows:

| Count | Charge |
|---|---|
| 1, 5 | possession of a firearm by a convicted felon |
| 2, 6 | possession with intent to distribute marijuana |
| 3, 7 | possession of a firearm during and in relation to a drug trafficking offense |
| 4, 8 | possession or distribution of cocaine |

Defendant argues that his conviction on counts 3 and 7 necessarily depends on the factual elements necessary to prove the charges in counts 1 and 5 and 2 and 6. He argues that because counsel conceded his client's guilt on counts 1, 2, 5 and 6, a jury finding of guilt on counts 3 and 7 was a foregone conclusion.

The evidence adduced at trial was that the defendant was convicted of the felony offense of possession of a short-barreled shotgun in 1993. (Doc. 59 at 161-166). A search warrant was executed at defendant's residence on June 20, 2003. (Doc. 59 at 167). In a bedroom identified by items contained therein as belonging to the defendant, law enforcement found a loaded Glock 10 mm handgun (doc. 59 at 172-173; doc. 60 at 47), a shoebox containing 445.1 grams of marijuana and another shoebox containing two handguns under defendant's bed, (doc. 59 at 275-277; doc. 60 at 116). Evidence from the execution of the first search warrant provided the factual basis for counts 1, 2 and 3 of the indictment.

On October 30, 2003, law enforcement made a controlled cocaine buy from the defendant at that residence, using the defendant's uncle, William Weston Pennywell, as an informant. (Doc. 59 at 176; doc. 60 at 57-61). Two law enforcement officers, Eric Beaty and Mark Andrew Walton, and the informant Mr. Pennywell, testified about this transaction, which provided the factual basis for count 4.

A second search warrant was served at the defendant's residence on November 29, 2003. (Doc. 59 at 183-84). A woman in the living room stated she had just bought the drugs from the defendant. Defendant was located in his bedroom within a few feet of sixty bags of marijuana that were found on the bed. (Doc. 59 at 188; doc. 60 at 62-63). In addition, four bags of cocaine totaling 3.5 grams were found on a nearby dresser. (Doc. 60 at 20-21, 63, 123-124). Inside a closet was a suitcase bearing two identification tags with the defendant's name, containing a loaded .44 magnum revolver. (Doc. 59 at 189; doc. 60 at 21-24). An automobile apparently owned by defendant's mother was found in the backyard. (Doc. 59 at 192-93; doc. 60 at 67). It contained court papers, a letter, and a tire receipt, all in defendant's name, and, in the trunk, more than one hundred bags of marijuana. (Doc. 60 at 64-68, 120-123). Officers seized a videotape from the defendant's residence in which he claimed ownership of the vehicle. (Doc. 60 at 96). The charges in counts 5, 6 and 7 of the indictment arose from this search warrant.

On May 12, 2004, defendant was arrested on a federal indictment relating to his drug activities in 2003. (Doc. 60 at 26). He was found near his home with 22 small bags

of cocaine in one front pocket and $484.00 in the other. (Doc. 60 at 27-29). This cocaine provided the basis for count 8 of the indictment. Defendant claimed, after being read his *Miranda* rights, that the marijuana and guns all came from a "white guy named Paul," that he was only making enough money to get by, and that he dealt drugs because he had child support obligations. (Doc. 60 at 72-74).

>   In his closing argument, defense counsel stated:
>
>   I'm not going to be so foolish to stand here and try to insult your intelligence by suggesting for a moment that Mr. Hunter was not involved in the drug business. I mean, it would appear to anybody who had been here for the last day and a half that that may be the case. The police officers thought he was. He was caught with drugs, on a minimum on the 12th of May when he was apprehended on a federal warrant.

(Doc. 60 at 179). Counsel addressed counts 3 and 7 of the indictment by saying that the government had not proven its case because it had not shown that the guns in question belonged to the defendant. (Doc. 60 at 182). Counsel also argued that even if the defendant arguably used guns in furtherance of his drug activity, on the date he was arrested, when he was out on his bicycle in a situation where he could not get away from someone who might want to "strong-arm" him, and presumably it would have made sense to be armed, he did not have a gun. (Doc. 60 at 183). He also attempted to cast doubt on the government's supposition that the presence of weapons in defendant's room necessarily meant that he knew that they were there, noting the lack of fingerprints on the weapons and the lack of gun-cleaning solvents or other tools. (Doc. 60 at 183-184). Defense counsel further argued that Mr. Pennywell, the informant, who was presumably familiar with defendant's activities, never suggested to law enforcement that defendant might have weapons at his disposal. (Doc. 60 at 187). In closing, counsel stated:

>   And think about, were these weapons, if indeed they were Mr. Hunter's, used in the furtherance of drug activity? We submit there is no evidence of that, and he should be acquitted of Counts 3 and 7. With respect to Count 4 dealing with Mr. Pennywell, the supposed [controlled] buy within 2012 7th Court, he should also be acquitted. Why? Because we don't think that has been proven beyond a reasonable doubt. The defense feels you should have a real doubt bout the evidence as it applies to that count. With that, I'll close.

*Case No: 5:04cr26/MCR; 5:06cv176/MCR/MD*

(Doc. 60 at 187-88).

> The prosecutor opened his rebuttal by stating:
>
> Ladies and gentlemen, if I heard Mr. Bubsey right, he wants you to acquit on Count 4, drug sale of Pennywell, 3, firearms in furtherance of in June, and 7, furtherance of firearm in November, and apparently the defendant concedes the government has proved all of the other counts. I'm not going to talk about the other counts.

(Doc. 60 at 188).

The government did not submit an affidavit from defense counsel in opposition to the § 2255 motion. Nonetheless, in its responsive brief it makes statements such as "according to defendant's counsel" and ascribes as motivation for counsel's strategy a desire to "gain credibility with the jury by not disputing obvious facts, reserving his arguments for those matters which might be legitimately debated [the possession of firearms in connection with drug trafficking offenses and the controlled buy by Pennywell] which concerned the most severe penalties defendant faced." (Doc. 85 at 4). The government argues that defense counsel did not concede guilt on any count, but focused his arguments where the defendant had the best chance to prevail, and where the impact on sentencing could be the greatest.

The only case cited by the government in support of its opposition was *Florida v. Nixon*, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), a capital murder case in which the defense attorney conceded his client's guilt during the penalty phase of the trial in order to concentrate his defense on sparing his client's life during the penalty portion of the proceedings. The Florida Supreme Court had held that a concession of guilt, made without the defendant's express consent, automatically ranked as prejudicial ineffective assistance of counsel. The Supreme Court reversed, finding that a presumption of prejudice was not proper "based solely on the defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant." 125 S.Ct. at 555. In *Nixon*, the defendant's behavior, which began as merely unresponsiveness to counsel, degenerated into disruptive and violent behavior, ultimately leading to his absence from virtually the entire proceedings. 125 S.Ct. at 557. Counsel

repeatedly expressed his view of the case to his client, but at each consultation the defendant failed to give a definitive response or do anything "affirmative or negative." 125 S.Ct. at 559.  The Supreme Court found that counsel had fulfilled his duty of consultation by informing his client of the proposed strategy and its potential benefits, and that the strategy of concession was potentially reasonable in a capital murder trial.  125 S.Ct. at 561-563.

In *United States v. Dago*, 441 F.3d 1238 (10th Cir. 2006) the defendant maintained in a § 2255 motion that counsel was constitutionally ineffective because in his closing argument he stated that the defendant should be convicted of several counts of the indictment.[1]  A hearing had been held in the district court, but the appellate court was hampered in its review because a transcript of counsel's closing argument was not included in the record, and thus it could not conclusively determine whether counsel's statements amounted to a concession of guilt.  441 F.3d at 1250.  The court found after review of the record that it was "possible that counsel did not concede [defendant's] guilt on many counts, . . . but merely focused on challenging the conspiracy and CCE counts against his client while remaining silent about other counts."  441 F.3d at 1251.  It acknowledged that "[d]epending on the particular characteristics of such an effort, this would not necessarily amount to ineffective assistance, for 'experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments and focusing on one central issue if possible. This insight is ... applicable to closing arguments made at trial.'"  441 F.3d at 1251 (quoting *United States v. Williamson*, 53 F.3d 1500, 1512 (10th Cir.1995) (quotations, alterations, and citations omitted)).  Thus, a defense counsel's effort to obtain an acquittal for his client on a conspiracy charge, rather than focusing on challenging the substantive distribution charges, did not necessarily undermine counsel's otherwise ethically and constitutionally sufficient representation.  *Id.*, citing *Williamson*, 53 F.3d at 1512; see also *Fowler v. Ward*, 200 F.3d 1302, 1310-11 (10th Cir. 2000) (finding no ineffective assistance where counsel conceded the defendant's

---

[1] The issue of whether counsel should have discussed his strategy with the defendant was not at issue in *Dago*.

presence at the crime scene because the concession was consistent with the defense theory that defendant was not the principal in the alleged crime), *overruled on other grounds*, *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001); *Hale v. Gibson*, 227 F.3d 1298, 1323 (10th Cir. 2000) (holding that defense counsel "made a reasonable strategic decision to concede some involvement by [the defendant] ... and focused on the extent of his involvement and whether others could have been involved")). The court recognized, as the government argues in the instant case, that "it is a time-honored strategy of advocates to cede evidence that cannot be rebutted so that counsel has credibility to challenge evidence where challenge is fruitful." 441 F.3d at 1252.

In this case, the government argues that defense counsel's strategic decision to curry favor with the jury and to challenge the two § 924(c) charges which comprised 360 months (85%) of the sentence ultimately imposed fell within the parameters of *Strickland*.[2] Counsel admitted, in the light of overwhelming evidence,[3] that the jury might find the defendant was involved in the drug business. Instead, he concentrated on challenging the government's proof that the defendant possessed the firearm in furtherance of drug trafficking activity. The fact that this strategy ultimately was not successful is not the standard by which an ineffective assistance of counsel claim is reviewed, as counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. And, similar concessions or partial concessions of guilt in opening statements or closing argument have been upheld by other appellate courts. *See Hayes v. Cain,* 272 F.3d 757, 762 n.14 (5th Cir. 2001) ("Where counsel acknowledges, in closing argument, the overwhelming weight of evidence that has been admitted against his client, even conceding his client's guilt, we

---

[2]Because a second 924(c) conviction, even within the same proceeding, is sentenced more harshly, if defendant had been acquitted of either count, he would have avoided 300 months of the sentence that was imposed.

[3]Two searches pursuant to warrant revealed sales quantities of marijuana in defendant's bedroom; his uncle made a controlled buy of cocaine from him; when he was arrested, he was caught with cocaine and drug proceeds in his pocket; and he confessed to selling marijuana and having firearms that he had obtained from a common source.

have found that such an acknowledgment of the obvious may be a trial tactic that does not reach the level of ineffective assistance."); *United States v. Short*, 181 F.3d 620, 624-625 (5th Cir.1999) (finding counsel who implicated his client in the drug trade during closing arguments took the reasonable strategic approach of trying to establish his credibility with the jury and enhance his chances that the jury would accept his arguments on the more serious counts, in light of the overwhelming evidence of guilt adduced at trial); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir.1991) (an acknowledgment of guilt can be a sound tactic when the evidence is overwhelming, there is no reason to suppose that any juror doubts this, and the count in question is a lesser count, so that there is advantage to be gained by winning the confidence of the jury); *Trice v. Ward*, 196 F.3d 1151, 1162 (10th Cir. 1999) (no prejudice where counsel conceded guilt as to a rape charge accused had confessed to, in an attempt to persuade the jury his client was not guilty of more serious first degree murder charge); *United States v. Wilks*, 46 F.3d 640, 644 (7th Cir. 1995) (concession of guilt in opening statement was not prejudicial where evidence of guilt was irrefutable, accused did not object and told court he was satisfied with the performance of his counsel); *United States v. Tabares*, 951 F.2d 405, 409 (1st Cir.1991) (counsel's admission to jury that defendant was guilty of less serious offense "was a tactical decision, designed to lead the jury towards leniency on the other charges and to provide a basis for a later argument for a lighter sentence"); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir.1991) (reasonable trial tactic for lawyer to "conced [e] client's guilt of offense of which the evidence was overwhelming, and to focus his efforts on the weakest link in the [government's] case"); *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) (no prejudice where the accused had confessed on tape and counsel conceded guilt of lesser charge of manslaughter to defeat government's claim of premeditation). See also *State v. McNeill*, 346 N.C. 233, 485 S.E.2d 284 (N.C.1997) (no prejudice when defense stipulated to stabbing and accused agreed to concession strategy) and *People v. Johnson*, 128 Ill.2d 253, 131 Ill.Dec. 562, 538 N.E.2d 1118 (1989) (no prejudice when counsel conceded guilt to a crime to which the accused had confessed).

Based on this court's review of the record and taking into account the evidence of record, it finds that defendant has failed to show that "no competent counsel would have taken the action that his counsel did take," *Freixas*, 332 F.3d at 1319-1320, or that but for counsel's allegedly deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Therefore, he is not entitled to relief.

### B. Prosecutorial Misconduct

Defendant's second ground for relief is that the prosecutor improperly commented on counsel's admission of his client's guilt. The government maintains that the prosecutor did nothing more than note that defense counsel had focused on three charges, was apparently not disputing the others, and thereby explained that rebuttal remarks would be confined to the disputed charges. There was nothing improper in the prosecutor's remarks.

### C. Improper Federal Prosecution

Defendant's third ground for relief is that the federal prosecution was a "Sham Prosecution" and that he should have been tried in state court, citing *United States v. Baptista*, 17 F.3d 1354, 1360 (11th Cir. 1994). It is well established that elementally identical offenses are nevertheless different for purposes of the Double Jeopardy Clause when they are charged by separate sovereigns. See, e.g., *United States v. Wheeler*, 435 U.S. 313, 317, 98 S.Ct. 1079, 1082-83, 55 L.Ed.2d 303 (1978); *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922); *United States v. Baptista*, 17 F.3d 1354, 1360 (11th Cir. 1994). The dual sovereignty doctrine permits each sovereign to prosecute the offense against it. *Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985); *Baptista*, 17 F.3d at 1360. In *Baptista*, the court noted that the "sham prosecution" exception to the dual sovereignty doctrine was alluded to in *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). To fit within the exception, the defendant must show that one sovereign was so dominated, controlled, or manipulated

by the actions of the other that it did not act of its own volition. *United States v. Baptista*, 17 F.3d 1354, 1360 (11th Cir. 1994) (citing *United States v. Liddy*, 542 F.2d 76, 79 (D.C.Cir.1976); *United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991)). In *Baptista*, the defendants claimed that their first prosecution, by the Bahamian government, was a sham because it was essentially operating as an agent of the United States government, and they should not have been prosecuted again in United States courts. However, the *Baptista* court did not decide whether the exception was valid, because the defendants had not established that they could prevail on their claim. The sham prosecution exception clearly is not applicable in this defendant's case. The fact that defendant believes he could have been acquitted or that he would have received a lesser sentence in state court is irrelevant to the federal sovereign's right to choose to prosecute the case against him.

Defendant also makes reference to the Petite Policy, which directs that several offenses arising out of a single transaction should be prosecuted together, and under which the Department of Justice requires approval for successive prosecutions, where there has been a prior prosecution. *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). This policy is inapplicable to the facts of the instant case, as the state prosecution was terminated when the federal prosecution commenced. Furthermore, *Petite* does not give a criminal defendant the right to enforce this policy. See *United States v. Beard*, 41 F.3d 1486, 1490 n.11 (11th Cir. 1995).

Finally, defendant asserts in this section of his memorandum that he was out of state on June 20, 2003, the day the first search warrant was executed, and that counsel should have introduced evidence of this at trial.[4] Defendant states in his affidavit that he was visiting family members in New Haven Connecticut on the date in question. He states that after returning from Connecticut, he was "made aware that the police had broke (sic) into the house," and he and his brother went to the police station to find out what the break-in was all about. He states that he was told that drugs and weapons were found in the

---

[4] He offers the fact of his presence in New Haven as evidence that his federal prosecution was a "sham prosecution," without any apparent basis for his assertion.

*Case No: 5:04cr26/MCR; 5:06cv176/MCR/MD*

house, and that he told law enforcement that he had no knowledge of any drugs or weapons in the house and that he was out of town. Defendant's brother told law enforcement that the only person who had been staying at the house was Willie Pennywell. Defendant claimed that he was "ready to take the case to jury trial in the state when they turned it over to the feds." He claims that he would have won the case in state court because he had witnesses that Willie Pennywell was the only person staying at the house while he was in Connecticut, and that Pennywell was trying to "set him up." He expressed his belief that Pennywell put guns in his house in order to avoid Pennywell's own drug charges.

In conjunction with his reply to the government's response, defendant has submitted the identical affidavits of four individuals who state that they could attest to the fact that defendant was in New Haven, Connecticut on the date the search warrant was executed. (Doc. 89, attachments).[5] Each affiant also states that it is his or her understanding that defendant told counsel that he was in New Haven, and that the attorney should have contacted the affiant, who could have verified that information.

The government's only response to this line of argument is that if defendant were in Connecticut on June 20, 2003, he should have told his attorney so that counsel could have developed the evidence and used it to defend him. The defendant claims that he did tell counsel about it, but that counsel refused to investigate.

Assuming, for sake of argument, that the evidence presented by the defendant in support of his motion could have been presented to the jury, the court finds that it is not necessarily exculpatory, and would not have changed the outcome of the proceedings. The fact that defendant was absent from his home on the date the search warrant was executed does not mean he could not have been there the day before,[6] or that he could not have been responsible for the drugs and weapons that were seized. Although defendant was not required to testify in his own behalf, the fact that defendant now claims

---

[5] In defendant's supplement, he states that several of the witnesses would testify that he was in Connecticut for "several weeks," which is different than the information presented in the affidavits.

[6] There is nothing in the record reflecting the date the defendant actually left Florida.

Case No: 5:04cr26/MCR; 5:06cv176/MCR/MD

that he did not know anything about the drugs or weapons seized from his home on June 20, 2003 could have been presented to the jury through his own testimony had he chosen to do so.  The record reflects that defendant and his attorney were in apparent agreement that he would not testify, (doc. 60 at 163-164), and nowhere in the record has he suggested otherwise.  Additionally, defendant now speculates that his uncle had planted the drugs and guns in his residence.  He claims that he had witnesses willing to testify that Pennywell had been setting people up and creating crimes to stay out of jail for his own drug activities and that many people had access to the residence during his absence.  However, these assertions are unsupported by the affidavits he submitted.  Thus, to the extent that he contends counsel was ineffective for failing to investigate and present this evidence, he has not shown counsel's performance to be constitutionally deficient.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 78)  be DENIED.

At Pensacola, Florida, this 9th day of March, 2007.

/s/ Miles Davis
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 5:04cr26/MCR; 5:06cv176/MCR/MD*